IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

ELMER T. PRESTON,
PLAINTIFF,

V.                                                                            Civil Action No. 1:23-CV-00053-JPJ-PMS

VIRGINIA COMMUNITY
COLLEGE SYSTEM,
DEFENDANT.

### AMENDED COMPLAINT

NOW COMES the Plaintiff, ELMER T. PRESTON by and through his attorney CERID LUGAR, ESQ., of the LAW OFFICE OF LUGAR LAW, and here asserts this amended complaint at law against Defendant VIRGINIA COMMUNITY COLLEGE SYSTEM for damages resulting from retaliation, disparate treatment and racial discrimination.

### INTRODUCTION

1.  Elmer T. Preston brings causes of action under Title VII of the Civil Rights Act of 1964 (as amended), §§ 703(a), 704(a), and 706(g) (42 U.S.C. sec 2000e-2, 2000e-3(a), 2000e-5(g)), against Virginia Community College System arising from discrimination against him on the basis of his race and retaliation against him for his complaints about discrimination.

### PARTIES

2.  Plaintiff, Elmer T. Preston is a resident of Washington County, Virginia, and was a permanent employee with Virginia Highlands Community College (VHCC) for two periods, most recently from 2017 until his termination on March 20, 2021.  Mr. Preston is a Black man.

3.  VHCC is located at 100 VHCC Drive, Abingdon, VA 24210, in Washington County.

Page **1** of **9**

4.  VHCC is a college administered by the State Board for Community Colleges through the administrative entity known as Virginia Community College System (VCCS).

5.  VHCC and Defendant VCCS serve Washington County and its environs.

6.  At all relevant times, Plaintiff was an "employee" of VCCS as defined by 42 U.S.C. § 2000e(f).

7.  At all relevant times, VCCS was and is an "employer" as defined by 42 U.S.C. § 2000e(b).

## JURISDICTION AND VENUE

8.  On or about March 12, 2021, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and pursuant to the EEOC's work sharing agreement with the Virginia Division of Human Rights (EEOC Charge No.: 438-2021-00606 ("Charge of Discrimination"). Attached hereto as "Exhibit A".

9.  Plaintiff's Charge of Discrimination included the subject discrimination claims based upon his race (African American) as well as retaliation.

10. The EEOC issued a Dismissal and Notice of Rights dated September 20, 2023 ("Notice") with regard to the Charge of Discrimination. Attached hereto as "Exhibit B".

11. Plaintiff timely files this action less than ninety (90) days after his receipt of the Notice from EEOC.

12. This Court has subject matter jurisdiction over this action pursuant to Title VII.

13. Venue for this action properly lies in this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to this action arose in Abingdon, Virginia, which is among the territories assigned to the Abingdon Division of the Western District of Virginia.

## ALLEGATIONS

14. Plaintiff was employed at VHCC as a housekeeper.

15. Plaintiff's last day of Employment was on or about March 20, 2021, or March 1, 2021.

16. As a result of the discrimination perpetrated by Defendant's employees and maintained by the Defendant due to failure to protect Plaintiff from such discrimination, the Plaintiff was terminated.

## COUNT I - DISCRIMINATION

17. Plaintiff incorporates by reference and realleges each allegation set forth above.

18. Plaintiff, a Black man, was reprimanded inappropriately, given different assignments, told to use different facilities, and given different work parameters than white coworkers.

19. In March 2020, Plaintiff was instructed to not enter rooms with COVID sanitation signs on them or tape on the locks.

20. On or about March 29, 2020, the college Police Chief, Kevin Widener, and administrative assistant, Kayla Davidson, reprimanded Plaintiff for not cleaning rooms with COVID sanitation signs on them or tape on the locks.

21. In the March 29, 2020, meeting, Kayla Davidson informed Plaintiff that he would be removed from his work area; assigned to work out of a closet in another building; use only one restroom; use one breakroom; park in one spot; and would not be allowed to use a state vehicle.

22. Plaintiff complained to VHCC Vice President, Laura Pennington, and VHCC President, Adam Hutchison, about his disparate treatment.

23. Defendant brought in an outside investigator, Kim Steiner, to conduct a culture and climate assessment.

24. On or about August 11, 2020, Kim Steiner provided her report and indicated she found evidence of discrimination against Plaintiff based on his race and made suggestions to Defendant

Page 3 of 9

on possible remedies. Attached hereto as "Exhibit C" and hereinafter referred to as "Steiner's Report".

25. Steiner's Report implicated disparate treatment and lack of accountability. The report further indicated that because of the lack of accountability, "the circumstances surrounding the situation with Mr. Preston" are "that much starker".

26. Steiner's Report indicated a recurring theme in conversation "is that some full-time employees are not held accountable for completing work".

27. Steiner's Report also indicated that "more than one individual in a supervisory role shared blatantly racist comments either regarding their supervisory style and/or the purpose of [Steiner] being asked to interview them".

28. Additionally, Steiner's Report discussed that an apparent conflict of interest occurred "in having Ms. Davidson take disciplinary action against an employee who has had a falling out with her stepfather, with information that was clearly provided by her stepfather."

29. When discussing Mr. Preston's treatment, Steiner's Report states "the lack of accountability makes the treatment of Mr. Preston stand out that much more an outlier," that "one individual went so far as to say that Mr. Preston should be grateful for the 'help' he received because it was intended to take away temptation that would keep him from doing his work and wasn't real discipline, just luxuries being taken away".

30. Steiner's Report recommended "diversity, equity, and inclusion training with all employees".

31. Steiner's Report further recommended that "remedies for protecting Mr. Preston from ongoing discrimination and what restitution should be made" should be determined.

Page **4** of **9**

32. Defendant made some changes in response to Plaintiff's complaints and the Steiner's Report, but disparate treatment continued. Most of the changes were more cumbersome and punitive to Mr. Preston.

33. Such disparate treatment meant Mr. Preston's job duties changed, his hours were changed to his detriment, he was targeted and accused of not performing his job (despite never having ever been written up before for poor work performance), required to attend meetings on his off days without pay, changing his mechanism of signing in to his detriment, to name a few.

34. Likewise, on or about December 19, 2020, Plaintiff was given a written counseling memo about performance, and challenged the accuracy of many of the items listed.

35. On or about January 27, 2021, Plaintiff's schedule was changed. Plaintiff's approved 2-day 10-hour work week was changed to 12-hour shifts.

36. Defendant violated Plaintiff's Due Process pursuant to Administrative Procedures Standards of Conduct E. Attached hereto as "Exhibit D" and herein after referred to as the "Due Process Clause".

37. The Due Process Clause requires that prior to disciplinary action, including written notices, and terminations, "employees must be given oral or written notification of the offense, an explanation of the agency's evidence in support of the charge, and a reasonable opportunity to respond".

38. Despite Plaintiff's attempts to address his disparate treatment with supervisors, and without notice or a reasonable opportunity to respond, Plaintiff was terminated.

## COUNT II - RETALIATION

39. Plaintiff incorporates by reference and realleges each allegation as set forth above.

40. As discussed above, Plaintiff complained to VSCC (including, specifically the Vice President and President of VHCC) about the racial discrimination, being given different assignments, told to use different facilities, and given different work parameters than white coworkers.

41. Plaintiff had a good faith belief that Defendant violated his rights under Title VII of the Civil Rights Act of 1964 and Virginia Code §40.1-27.3.

42. In response, Defendant retaliated against Plaintiff for complaining about discrimination by significantly increased Plaintiff's work assignments, changed Plaintiff's schedule and subsequently terminated Plaintiff.

43. Defendants knew, or showed reckless disregard for the fact, that these retaliatory actions against Plaintiff were prohibited by the Civil Rights Act of 1964.

44. Due to the actions of the Defendant, Plaintiff suffered lost wages and benefits, damage to his reputation, and emotional and mental distress, including, but not limited to, humiliation and embarrassment, all of which are continuing.

## COUNT III – WRONGFUL TERMINATION

45. Plaintiff incorporates by reference and realleges each allegation set forth above.

46. As discussed, Plaintiff had a good faith belief that Defendant was violating his rights under Virginia Human Rights Act - Virginia Code §2.2-3905 B.1.

47. Plaintiff was targeted, alienated and treated disparately because of his race.

48. In response to complaints made by Mr. Preston, the Defendant retaliated against Plaintiff for complaining about discriminatory practices by significantly increasing Plaintiff's work assignments, changing Plaintiff's schedule, and subsequently terminating Plaintiff.

49.     Defendants treated Mr. Preston differently due to his race and ultimately terminated him due to their race-based practices.

50.     Due to the actions of the Defendant, Plaintiff suffered lost wages and benefits, damage to his reputation, and emotional and mental distress, including, but not limited to, humiliation and embarrassment, all of which are continuing.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Enter judgment in his favor and against Defendant;

B.      Declare the acts and practices complained of herein to be unlawful and in violation of Plaintiff's rights secured by Title VII of the Civil Rights Act of 1964 (as amended), §§ 703(a), 704(a), and 706(g) (42 U.S.C. sec 2000e-2, 2000e-3(a), 2000e-5(g));

C.      Enjoin Defendant from engaging in such unlawful employment practice and order such other affirmative action as may be deemed appropriate;

D.      Award Plaintiff compensatory damages for Defendant's violation of Plaintiff's federal constitutional and civil rights, including, without limitation, pecuniary losses, lost wages, damages for mental and/or emotional distress, inconvenience, humiliation, embarrassment, personal and professional reputational damages, and other damages to be shown at trial;

E.      Award Plaintiff all back pay and benefits, including salary increases, with interest on same running from the earliest recoverable date until the date a final judgment is entered for him;

F.      Award him back pay and benefits, including salary increases, bonuses, vacation pay, and health insurance, and additional equal amount as liquidated damages;

G.      Award him reputational damages to compensate him to compensate him for the loss of income and earning capacity that Defendant's conduct has caused;

H.      Award him money damages for the emotional distress caused by the unlawful actions of Defendant;

I.      Award Plaintiff punitive damages against Defendant;

J.      Award Plaintiff his reasonable attorney's fees and costs expended herein;

K.      Award Plaintiff a separate amount to offset the adverse tax effects of lump sum payments of damages and/or back pay;

L.      Award Plaintiff pre- and post-judgment interest on any monetary award;

M.      Award Plaintiff all other equitable relief as may be appropriate to effectuate the purposes of 42 U.S.C. § 2000e-5; and

N.      Award Plaintiff all other such equitable relief as may be appropriate to effectuate the purposes of 29 U.S.C. § 215(a)(3); and

O.      Award Plaintiff any and all other and further relief the Court deems just and appropriate, including leave to amend the facts stated herein, add or change parties and/or claims, and amend the damages sought as further evidence is obtained through discovery in this matter.

**Plaintiff demands a trial by jury on all issues.**


                                Respectfully submitted:

                                ELMER T. PRESTON



                        By:  ___/s/ Cerid Lugar_____

                                Cerid E. Lugar, Counsel

Cerid E. Lugar (VSB# 77006)
LUGAR LAW
P.O. Box 8834
Roanoke, VA 24014
Telephone (540) 523-1633
Facsimile (540) 301-2283
*Counsel for Plaintiff*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>438-2021-00606 |
|---|---|---|

**VIRGINIA OFFICE OF CIVIL RIGHTS** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.)<br>**MR. ELMER T PRESTON** | Home Phone<br>**(540) 793-8539** | Year of Birth |
|---|---|---|

Street Address: **PO BOX 105, GLADE SPRING, VA 24340**   City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name<br>**VIRGINIA HIGHLANDS COMMUNITY COLLEGE** | No. Employees, Members<br>**201 - 500** | Phone No.<br>**(276) 739-2400** |
|---|---|---|

Street Address: **P.O. BOX 828, ABINGDON, VA 24212**

| Name | No. Employees, Members | Phone No. |
|---|---|---|

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest: **02-21-2021**    Latest: **03-03-2021**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**I.  I was hired as a Housekeeper by the above-named employer in 2015. On March 24, 2020, the vice president over my area informed the maintenance supervisor (who is also my supervisor) that no one could enter into rooms with COVID sanitation signs on them or tape on the locks. On March 21-22, 2020, I did not clean two rooms because there was COVID sanitation sign on the door and tape over the locks. On March 29, 2020 I was called to a meeting by the part-time administrative assistant of my department (who was accompanied by the college police chief). Her step-father is the part-time police officer who works on the weekend. I was given a printed email that indicated that I had failed to clean some classrooms the weekend before; and I was told by the assistant that because of this I would be removed from my work area, assigned to work out of a closet in another building, use one restroom, use one break room, couldn't drive the state vehicle to do my work, and had to park in one spot. My white coworkers did not clean the rooms that were similarly marked with signs and they were not removed from their work area. On March 29, 2020 I spoke to a vice president at the college about what happened. In June 2020, I spoke to the president**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally signed by Elmer Preston on 03-12-2021 09:47 AM EST** | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

**EXHIBIT A**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>**438-2021-00606** |
|---|---|---|

**VIRGINIA OFFICE OF CIVIL RIGHTS** and EEOC
*State or local Agency, if any*

about being moved to a closet and being segregated. The president worked with a human resource person at another college to conduct a review (I received a copy of the resulting report in late August 2020). After this, the campus police officer I mentioned earlier was removed from working with me on Sundays. Since this time, the nature of the communication I receive about my work assignments has changed, and the amount of assignments has increased significantly. On December 19, 2020 I was asked to come to a meeting by my supervisor; when I arrived, the human resources coordinator was also there. I was given a memo about performance and conduct issues and my supervisor and the human resources person talked about them. I challenged the accuracy of many of the items. I sent a certified, return-receipt letter in response to the memo and the meeting. On January 27, 2021, I received two certified, return-receipt letters from the college regarding entering my time, my work assignments, my work schedule, and communications. Regarding my work schedule, I was told that I would no longer be able to work my approved 2-day, 10-hour work schedule and I had to work 12-hour shifts

II.       There has been no reason given to me for the discrimination.

III.      I believe that I was discriminated against because of my race (Black) and subjected to retaliation for engaging in a protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Elmer Preston on 03-12-2021 09:47 AM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1.    FORM NUMBER/TITLE/DATE.**  EEOC Form 5, Charge of Discrimination (11/09).

**2.    AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3.    PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4.    ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5.    WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Richmond Local Office
400 N. Eight Street, Suite 350
Richmond, VA 23219
(804) 362-6910
Website: www.eeoc.gov

# DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/06/2023

**To:** Mr. Elmer T. Preston
PO Box 105
GLADE SPRING, VA 24340

Charge No: 438-2021-00606

EEOC Representative and email:     STEPHANIE BROWN
Investigator
stephanie.brown@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 438-2021-00606.

On behalf of the Commission,

For

Daron Calhoun, Director

Cc:
Laura McClellan
VIRGINIA HIGHLANDS COMMUNITY COLLEGE
PO Box 828
Abingdon, VA 24212

EXHIBIT B

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

**HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS**

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request

Enclosure with EEOC Notice of Closure and Rights (01/22)

identifying your request as a "FOIA Request" for Charge Number 438-2021-00606 to the District Director at Elizabeth A. Rader, 129 West Trade Street Suite 400

Charlotte, NC 28202.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 438-2021-00606 to the District Director at Elizabeth A. Rader, 129 West Trade Street Suite 400

Charlotte, NC 28202.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

Date: August 11, 2020

To: Dr. Adam Hutchison
From: Kim Steiner, AVP for Human Resources, Southwest Virginia Community College

RE: VHCC Observations and Recommendations from Employee Interviews

Between the dates of 7/12/2020 and 7/23/2020, Kim Steiner, AVP for Human Resources, Southwest Virginia Community College, interviewed 20 Virginia Highlands Community College employees at the request of the President of Virginia Highlands Community College, Dr. Adam Hutchison, and the Associate Vice-Chancellor of Human Resources for the Virginia Community College System, Malinda Carter.

Overall Impression:

Most all of the VHCC employees were very cooperative and forthcoming in their interviews. For the most part they love working at VHCC and really miss having the students on campus. It is clear from my discussions with them that the time working under Dr. Couch has left a lasting negative impact. That being said, there appears to have been long-standing issues prior to Dr. Couch's appointment and since his departure.

Observations:

1. **Lack of Accountability:** Many employees identified there are employees who do not perform their fair share of work with no consequences. Quality and quantity of work completed is dependent almost wholly on the work ethic of the individual. When employees were asked what would happen to them if they stopped doing their work, most indicated they didn't believe there would be any consequences. Employees specifically assigned to grounds appear to have the least supervision or oversight of all the buildings and grounds employees. Mentioned were several situations involving the horticulture department and grounds staff. There seems to have been no follow through on several occasions of egregious errors that some think might have been purposeful destruction. Even if they were honest mistakes, there seems to have been no consequences or expectation of restitution. This makes the circumstances surrounding the situation with Mr. Preston that much starker.
2. **Supervision by peers:** Almost all employees indicated that they receive direct supervision for other employees who are not their director supervisor and who is not in a defined supervisory role. Some of this is informal, particularly in maintenance with Danny Thomas, and some is semi-formal on the custodial side with Joyce Horn. In the case of Kayla Davidson, Mr. Nunley made it clear that she is absolutely his number two in facilities and is his stand-in when he is absent. He says she has excellent supervisory skills.  *[handwritten: not in Redacted version]* 
3. **Employees being treated differently:** A theme in the conversation, as mentioned earlier, is that some full-time employees are not held accountable for completing work. It was mentioned by more than one individual that this behavior mirrors that of the vice-president who oversees the department.
4. **Conflict of Interest/Coercion/Intimidation:** While most employees did not identify having experienced or witnessed any conflict of interest, coercion, or intimidation, there very much appears to be a conflict of interest in having Ms. Davidson take disciplinary action against an employee who has had a falling out with her step-father, with information that was clearly provided by her step-father.

**EXHIBIT C**

5. **Discrimination:** More than one individual in a supervisory role shared blatantly racist comments either regarding their supervisory style and/or the purpose of my being asked to interview them. I was told that if "Mr. Preston wasn't black you wouldn't even be here."
6. **Safety:** It was mentioned that many of the campus police staff help with different buildings/grounds activities even if they have not received the proper training. This indicates a lack of supervision and/or appreciation for employee safety.
7. **Mr. Preston's treatment:** As discussed previously, the lack of accountability makes the treatment of Mr. Preston stand out that much more as an outlier. From the Vice-President down the line all the employees with whom I discussed the situation tried very hard to either justify the decision making or withhold details that would implicate any kind of impropriety. One individual went so far as to say that Mr. Preston should be grateful for the "help" he received because it was intended to take away temptations that would keep him from doing his work and wasn't real discipline, just luxuries being taken away. According to this individual, if Mr. Preston had been disciplined fairly, he would have been fired. They argued Mr. Preston was being treated better than other employees. From my conversations it was made clear that Mr. Farris was the one who provided the information to Ms. Davidson about Mr. Preston.

Recommendations:

1. Hire a new supervisor for Buildings and Grounds. Preferably someone from outside the organization.
2. Make clear the expectation of professionalism for the senior team with a focus on communication, collaboration, and follow-through.
3. Divest HR from the VP for Finance and Administration. HR should report directly to the president. There are too many potential conflicts of interest and/or appearance of conflicts of interest to having your Chief Financial officer also serve as your Chief HR officer. This would be a recommendation even if things were working smoothly.
    a. All disciplinary actions taken in the VP for Finance and Administration chain should be reviewed by the President until such time as HR is divested.
4. Invest in diversity, equity, and inclusion training with all employees.
5. Invest in supervisor training and include those who informally supervise if that will be a continued model.
6. Determine remedies for protecting Mr. Preston from ongoing discrimination and what restitution should be made
7. Re-evaluate campus security responsibilities and expectations.
8. Re-evaluate the responsibilities of the part-time administrative assistant to make sure they are consistent with job level and pay class.
9. Have a documented process for approval of new hires.
10. Further investigation into the grounds staff and willful and/or accidental destruction of property is warranted. As well as an evaluation of how this group of employees is managed moving forward.

# Standards of Conduct

Policy: 1.60
Effective Date: April 16, 2008
Revised: 6/1/11

the date of reinstatement. The agency shall make appropriate refund(s) to the employee for the State portion of any health insurance premiums that he or she paid to continue coverage during the suspension.

- If an agency reinstates a suspended employee without back pay, there shall be no reimbursement for any portion of health insurance premiums that he or she paid to continue coverage.

  b.  Reinstatement from Termination

- If an agency reinstates a terminated employee with back pay, unless otherwise directed in the hearing officer's decision, health benefits must be made effective retroactive to the date of termination.

**Note**:

*Suspended and terminated employees may have purchased individual health insurance coverage or acquired coverage through a spouse's health benefits plan. Agencies should inquire about such coverage when discussing back pay and benefits with these employees. If the hearing officer does not grant back benefits because the employee was enrolled in other coverage during the period of suspension or termination, the employee must provide proof of the other coverage.*

## E. Due Process

*Prior to the issuance of any Written Notices, demotions, transfers with disciplinary salary actions, suspensions or terminations*, Agency Human Resource Directors or their designees should review the documentation for the recommended actions to determine if the action is appropriate for the offense; if a referral to the employee assistance program is advisable; and what the final recommendation for corrective action should be.

   1.  **Advance Notice of Discipline to Employees**

       Prior to the issuance of Written Notices, disciplinary suspensions, demotions, transfers with disciplinary salary actions, and terminations employees must be given oral or written notification of the offense, an explanation of the agency's evidence in support of the charge, and a reasonable opportunity to respond.

   2.  **Employee Response and "Reasonable Opportunity to Respond"**

       Employees must be given a reasonable opportunity to respond after receiving notification of pre-disciplinary or disciplinary actions. *Normally*, a 24 hour period is a sufficient period of time, however, a "reasonable opportunity to respond" should not be based solely on the quantity of time provided but

15



# Standards of Conduct

Policy: 1.60
Effective Date: April 16, 2008
Revised: 6/1/11

also on the nature of the offense, which may or may not require more or less time to refute or mitigate the charge.

### F. Use of Grievance Procedure

    **1.**    Classified, non-probationary employees may challenge corrective or disciplinary actions through the Employee Grievance Procedure, and may direct questions regarding this procedure to the Department of Employment Dispute Resolution.

    **Note:** *Employees hired after July 1, 2006 under the Higher Education Restructuring Act are not covered by the Virginia Personnel Act, but do have access to the State Grievance Procedure.*

    **2.**    **Hearing Officer's Authority**

    a.    General authority
A *hearing officer* may uphold, reduce or rescind corrective or disciplinary actions taken by an agency so long as the officer's decision is consistent with written policy.

    b.    Reinstatement by a *hearing officer*
When a *hearing officer* orders an employee's reinstatement from suspension or termination the hearing officer may order:

- full, partial, or no back pay; and/or

- a reduction in the employee's disciplinary record such that termination no longer could take place (e.g., the employee has only three Group I Written Notices or one Group II Written Notice). The officer must reinstate the employee with full back pay (minus an appropriate disciplinary suspension, if he/she wishes).

- credit for annual and sick leave that the employee did not accrue during the period of discharge and/or suspension.

    c.    Interim earnings
A hearing officer's award of back pay shall be offset by any interim earnings that the employee received during the period of separation, including unemployment compensation received from the Virginia Employment Commission.

    d.    Repayment of health insurance premiums

16